BENJAMIN S. SHARP *vs.* RHODE ISLAND HOSPITAL TRUST COMPANY *et al., Ex.*

JULY 24, 1942.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This is an action of assumpsit brought against the defendants, as executors of the will of George E. Smith, for medical services alleged to have been rendered by the plaintiff to the deceased from October 17, 1925 to November 8, 1935. After a trial in the superior court before a jury, a verdict was returned in favor of the plaintiff for the sum of $6037.20. The defendants' motion for a new trial was granted by the trial justice. The case is before this court on bills of exceptions prosecuted by the plaintiff and by the defendants respectively. The plaintiff argues that the trial justice erred in granting the defendants' motion for a new trial, while the latter contend that the trial justice erred in denying their motion to withdraw the first count of the declaration from the consideration of the jury, and also that he erred in denying their motion for a directed verdict.

We will first pass upon the defendants' exceptions. The declaration has two counts, the first on book account, and the second setting out the common counts. The defendants pleaded the general issue and the statute of limitations. At the trial they moved that the first count be withdrawn from the jury's consideration on the ground that there was no legal evidence to warrant the submission of that count to them. This motion was denied by the trial justice. We have examined the evidence and are of the opinion that there was no error in this ruling. The plaintiff's testimony respecting his original books and cards and their whereabouts, and his explanation of the method in which the records he produced were made up, may be open to question and may lead to different conclusions, especially when the new cards are compared with certain old cards in evidence. However, in view of the plaintiff's direct testimony, we cannot say that there was no legal evidence to support that count. The question thereunder became one of the weight and credibility of the evidence. The defendants' exception on this point is therefore overruled.

The defendants' exception to the denial of their motion for a directed verdict requires a brief statement of the per-

tinent evidence. It appears that the plaintiff was a practicing physician and surgeon in the city of Providence, and an eye, nose and throat specialist. The deceased, George E. Smith, who will be hereinafter referred to as Smith, was a successful business man of that city. They were close and intimate friends of long standing, that relationship continuing unbroken until early in 1936. The plaintiff treated Smith continuously from October 1925 to November 1935 for a nasal condition which apparently grew progressively worse. On November 19, 1934 Smith's condition was such as to require, according to the plaintiff, "radical operations on both sinuses in the jaw-bones, both cheek bones." The plaintiff performed this operation and on his cards charged Smith $500 for his services in connection therewith, although later he apparently accepted the sum of $400 in payment thereof.

Plaintiff testified that he kept an account of his charges for services to Smith and to his wife from 1925 through 1935, at which time he stopped treating them, and he produced certain records in support of this claim. These records were read in evidence by the plaintiff, but the records themselves were put in evidence by the defendants. The plaintiff further testified to a number of payments that Smith made on the account between 1925 and the date of the above-mentioned operation; also to two payments by Smith early in 1935 amounting to $400 for the said operation. In the instant case the greater part of plaintiff's claim is based upon a large number of palliative nasal treatments for which he charged $5 each. They number 1039 and cover a period of several years. They apparently were given because Smith had a small perforation of the septum, and the treatments tended to relieve certain conditions resulting therefrom.

The defendants contest the plaintiff's claim on three main grounds. First, that it is not made in good faith; second, that there was an account stated between the parties with full payment of that account by Smith; and third, that in any event the claim was barred by the statute of limitations.

Whether or not the defendants were entitled to a directed verdict depends upon the nature of the evidence in relation to these defenses.

Under their first contention the defendants urge the extremely intimate friendship between the plaintiff and Smith as strong evidence that the former did not intend to charge for the palliative treatments and that the latter did not expect to pay for them. These treatments the defendants' counsel characterized as "nose blows". They argue that such evidence becomes conclusive when consideration is given to the plaintiff's records, the correctness of which they seriously question, and which they interpret as having been prepared for the purpose of this case; to the fact that no bills were ever sent by the plaintiff to Smith; and to the fact that Smith was in the habit of paying his bills promptly.

The contention thus made shows that there was a question of fact for the jury to determine, in the first instance, especially when the plaintiff's own testimony and his explanation of the above-mentioned facts is taken into consideration. It is settled that on a motion to direct a verdict the trial justice does not pass upon the weight of the evidence or the credibility of the witnesses, but that he must submit the case to the jury for its determination if, on any reasonable view of the evidence, including legitimate inferences therefrom, the plaintiff can recover. *Power Service Corp.* v. *Pascoag Fire District,* 62 R. I. 167. Under the circumstances, in our opinion, the direction of a verdict for the defendants on this ground would have been improper.

The determination of the defendants' second contention, that there was an account stated between the plaintiff and Smith, depends upon the interpretation to be placed on certain evidence. On January 12, 1935 the plaintiff wrote to Smith, who was then in Florida, and, among other things, said: "George—I hate to ask this but I shall explain—I have been under rather heavy expense with Charlotte & the baby & I sure would appreciate a check on account to tide me over this heavy load." Smith answered this letter on January 16,

1935 and, after describing his physical condition, continued as follows: "You have placed me in a rather embarrassing position—You do not state how much I owe you nor did you intimate the amount you wished me to send, so enclose a check for $150.00 which I hope will help and suggest you mail me your bill to the 1st instant   I see no reason why you should not bill me monthly—its business". In his letter to Smith, dated January 18, 1935, the plaintiff wrote: "Received your letter Jan 16th in this morning mail. . . . The first of next month I shall straighten your bill & I shall mail you up to date—a bill for operations etc.  I guess we'll get along."

There is in evidence a bill, dated January 31, 1935, which the plaintiff testified he sent to Smith in compliance with his request in the letter just above mentioned. The body of that bill is as follows:

"For Services Rendered, which include preoperative, operation, and postoperative treatment.          $400.00
                              1-18-35 Paid on account      $150.00
                              _____
                              Balance due                  $250.00"

Attached to this bill are two checks of Smith's, one dated January 16, 1935 and the other, March 13, 1935.  Across the face of the bill is written in pencil: "Paid 3/13/35".

In a letter of the same date as the bill, the plaintiff said: "Enclosed—George—I have made up the entire bill for services rendered up to date & this bill I believe to be of a fair & reasonable am't for you.  I would have liked to send no bill whatsoever but unfortunately, I can not do otherwise." On February 22, 1935, the plaintiff, after referring to his financial condition, writes as follows: ". . . I find it rather embarrassing, still I feel that you are intimate enough & understanding of my circumstances to ask you if you find it possible to settle that little matter of my bill as I certainly could use the money urgently." The check of March 13, above referred to, which is attached to the said bill, apparently was sent by Smith in answer to the plaintiff's request in this letter.

The plaintiff explains his language in the said correspondence by saying that the bill rendered concerned only the charge that he finally made for Smith's operation of November 19, 1934. His contention is that whatever was stated by him in the course of said correspondence had no relation whatever to the open account upon which he bases his claim in this case. The defendants, on the other hand, contend that the plaintiff's present position is an afterthought, and that the correspondence above referred to conclusively shows that there was an account stated between the plaintiff and Smith, and that the latter had fully paid the balance due under such account by his check of March 13, 1935.

In our opinion, the issue raised by this evidence and the reasonable inferences to be drawn therefrom was one of fact. In *Allen & Sons* v. *Woonsocket Co.*, 11 R. I. 288, at page 297, the court said: "What is meant by an account stated? It means an account made up, stated, and adjusted by the parties, and a balance struck, or so that it may be struck . . . A stated account properly exists only where accounts have been examined and the balance admitted as the true balance between the parties." It is generally held that an account stated rests upon an agreement between the parties that the balance and all items of the account in question are correct, together with a promise, express or implied, that one party will receive and the other party will pay such balance. See 1 C. J. S. 693.

Considering all the evidence and the conduct and relationship of the parties in the instant case, it was for the jury to determine whether there was a full and complete account stated between the plaintiff and Smith covering all their financial transactions. The trial justice properly refused to direct a verdict for the defendants on this ground, and he submitted this issue to the jury under instructions which were not excepted to by the defendants.

The third ground upon which the defendants moved for a directed verdict, namely, that the plaintiff's claim was

barred by the statute of limitations, is also untenable, as the testimony on this point is open to different interpretations. The present case was begun by writ dated June 14, 1940. There was evidence on behalf of the plaintiff which tended to show that Smith, after his return from Florida in 1936 made a promise to pay the plaintiff's claim now in suit. By that time the intimate and friendly relationship between the plaintiff and Smith apparently no longer existed, although, according to the plaintiff, they talked to each other when they met.

The plaintiff testified that he spoke to Smith twice about the bill after the latter's return from Florida. The first talk, which was in a bank, was as follows: "Q. What was that talk? A. Talked about his health, how he was getting along; about his wife, how she was doing, and I gradually led up to the settlement of our bill. He said when he got ready to do it . . . he would come back and thrash it out and pay me." On the second occasion, the plaintiff testified that he spoke to Smith in a lunch room; that at the end of the meal he asked him why he did not come up and pay his bill or settle it some way, one way or the other; and that Smith told him when he got ready he would come up. Because of these two conversations the plaintiff claims to have had with Smith, and which the defendants were unable to deny, owing to his death on October 9, 1939, the trial justice left it for the jury to decide whether or not Smith had in fact made a new promise to pay the plaintiff's bill. To the instructions of the trial justice on this issue, defendants took no exception.

Even though the plaintiff's evidence on the point under consideration may have been subject to attack, yet, in our opinion, based upon our well-established rule, above referred to, which governs the action of a trial justice when he passes upon a motion for a directed verdict, the trial justice was not warranted in disregarding such evidence entirely. We find, therefore, that he committed no error in denying the defendants' motion for a direction of a verdict on any of the

grounds urged by them, and their exception in this connection is overruled.

We will now consider the plaintiff's exception to the granting of defendants' motion for a new trial. The credibility of the plaintiff was an important factor in this case. This court has repeatedly held that, in considering a motion for a new trial, it is the duty of the trial justice to exercise his independent judgment in passing upon the weight of the evidence and the credibility of the witnesses. *Colgan* v. *United Electric Rys Co.,* 62 R. I. 184. The rescript of the trial justice shows that he properly performed his duty in this respect. He discussed the material evidence and pointed out that in his independent judgment it contained inconsistencies, and therefore did not supply that clear proof which the law demands in cases of this kind. The trial justice in thus expressing his independent judgment on the evidence was correctly applying the law as laid down by this court in *Paradise* v. *Rick,* 63 R. I. 207. See also *Armour* v. *Doonan,* 55 R. I. 243.

It is well settled that we will not disturb his decision on a motion for a new trial unless we can say that such decision was clearly wrong. In the instant case the plaintiff does not point out any material evidence which said justice misconceived or overlooked in arriving at his decision. He saw the witnesses and heard them testify, an advantage which we do not have in passing on their credibility, and he evidently did not believe the plaintiff. Upon consideration, we can not say the trial justice was clearly wrong in granting defendants' motion for a new trial. The plaintiff's exception to such ruling is, therefore, overruled.

The exceptions of both the plaintiff and the defendants are overruled, and the case is remitted to the superior court for a new trial.

*McKiernan, McElroy & Going, Peter W. McKiernan, John C. Going,* for plaintiff.

*William A. Gunning, Alfred H. Joslin,* for defendants.